**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT SCOTT,<br><br>           Plaintiff,<br><br>v.<br><br>VMWARE, INC., NICOLE ANASENES, ANTHONY BATES, MARIANNE BROWN, MICHAEL BROWN, MICHAEL DELL, KENNETH DENMAN, EGON DURBAN, KAREN DYKSTRA, RAGHU RAGHURAM, and PAUL SAGAN,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Scott ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against VMware, Inc. ("VMware" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell VMware to Broadcom Inc. ("Broadcom"). [1]

2. On May 26, 2022, VMware entered into an Agreement and Plan of Merger with Broadcom, VMware's subsidiary, Verona Holdco, Inc. ("Holdco"), Holdco's subsidiary, Verona

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

Merger Sub, Inc. ("Merger Sub 1"), and Broadcom's subsidiaries, Barcelona Merger Sub 2, Inc. ("Merger Sub 2") and Barcelona Merger Sub 3, LLC ("Merger Sub 3") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, VMware stockholders will have the right to receive: (a) $142.50 per share in cash; or (b) 0.25200 shares of Broadcom common stock for each VMware common share, at their election, subject to a proration mechanism such that 50% of the merger consideration is stock and 50% is cash.

2. On October 3, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that VMware stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (a) the financial projections for VMware and Broadcom; (b) the financial analyses that support the fairness opinions provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan"); (c) the go-shop process; and (d) J.P. Morgan's and Company insiders' potential conflicts of interest.

3. The Company's corporate directors subsequently authorized the October 3, 2022 filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is

disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of shares of VMware common stock.

---

[2] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for November 4, 2022.

10. Defendant VMware is a Delaware corporation with its principal executive offices located at 3401 Hillview Avenue, Palo Alto, California 94304. VMware's shares trade on the New York Stock Exchange under the ticker symbol "VMW." VMware is a leading provider of multi-cloud services for all apps, enabling digital innovation with enterprise control. VMware originally pioneered the development and application of virtualization technologies with x86 server-based computing, separating application software from the underlying hardware, and then evolved to become the private cloud and mobility management leader. The Company is focused on becoming a multi-cloud leader, aiming to help organizations take on information technology-related challenges through a multi-cloud strategy by providing the multi-cloud platform for all applications.

11. Defendant Nicole Anasenes is and has been a director of the Company at all times relevant hereto.

12. Defendant Anthony Bates is and has been a director of the Company at all times relevant hereto.

13. Defendant Marianne Brown is and has been a director of the Company at all times relevant hereto.

14. Defendant Michael Brown is and has been a director of the Company at all times relevant hereto.

15. Defendant Michael Dell is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

16. Defendant Kenneth Denman is and has been a director of the Company at all times relevant hereto.

17. Defendant Egon Durban is and has been a director of the Company at all times relevant hereto.

18. Defendant Karen Dykstra is and has been a director of the Company at all times relevant hereto.

19. Defendant Raghu Raghuram is and has been Chief Executive Officer and a director of the Company at all times relevant hereto.

20. Defendant Paul Sagan is and has been Lead Director and a director of the Company at all times relevant hereto.

21. Defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22. On May 26, 2022, VMware announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SAN JOSE and PALO ALTO, Calif., May 26, 2022 /PRNewswire/ -- Broadcom Inc. (NASDAQ: AVGO), a global technology leader that designs, develops and supplies semiconductor and infrastructure software solutions, and VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, today announced an agreement under which Broadcom will acquire all of the outstanding shares of VMware in a cash-and-stock transaction that values VMware at approximately $61 billion, based on the closing price of Broadcom common stock on May 25, 2022. In addition, Broadcom will assume $8 billion of VMware net debt.
>
> VMware, a leading provider of multi-cloud services for all apps, pioneered virtualization technology, an innovation that positively transformed x86 server-based computing. VMware then created the software-defined data center and played a leading role in virtualizing networking and storage, before evolving to become a hybrid cloud and digital workspace leader. Today, VMware's multi-cloud portfolio, spanning application modernization, cloud management, cloud infrastructure, networking, security and anywhere workspaces, forms a flexible, consistent digital foundation on which the largest and most dynamic enterprises

across industries build, run, manage, connect and protect their most important and complex workloads for the benefit of their customers.

Following the closing of the transaction, the Broadcom Software Group will rebrand and operate as VMware, incorporating Broadcom's existing infrastructure and security software solutions as part of an expanded VMware portfolio.

By bringing together the complementary Broadcom Software portfolio with the leading VMware platform, the combined company will provide enterprise customers an expanded platform of critical infrastructure solutions to accelerate innovation and address the most complex information technology infrastructure needs. The combined solutions will enable customers, including leaders in all industry verticals, greater choice and flexibility to build, run, manage, connect and protect applications at scale across diversified, distributed environments, regardless of where they run: from the data center, to any cloud and to edge-computing. With the combined company's shared focus on technology innovation and significant research and development expenditures, Broadcom will deliver compelling benefits for customers and partners.

Hock Tan, President and Chief Executive Officer of Broadcom, said, "Building upon our proven track record of successful M&A, this transaction combines our leading semiconductor and infrastructure software businesses with an iconic pioneer and innovator in enterprise software as we reimagine what we can deliver to customers as a leading infrastructure technology company. We look forward to VMware's talented team joining Broadcom, further cultivating a shared culture of innovation and driving even greater value for our combined stakeholders, including both sets of shareholders."

Raghu Raghuram, Chief Executive Officer of VMware, said, "VMware has been reshaping the IT landscape for the past 24 years, helping our customers become digital businesses. We stand for innovation and unwavering support of our customers and their most important business operations and now we are extending our commitment to exceptional service and innovation by becoming the new software platform for Broadcom. Combining our assets and talented team with Broadcom's existing enterprise software portfolio, all housed under the VMware brand, creates a remarkable enterprise software player. Collectively, we will deliver even more choice, value and innovation to customers, enabling them to thrive in this increasingly complex multi-cloud era."

Tom Krause, President of the Broadcom Software Group, said, "VMware has long been recognized for its enterprise software leadership, and through this transaction we will provide customers worldwide with the next generation of infrastructure software. VMware's platform and Broadcom's infrastructure software solutions address different but important enterprise needs, and the combined company will be able to serve them more effectively and securely. We have deep respect for

VMware's customer focus and innovation track record, and look forward to bringing together our two organizations."

Michael Dell, Chairman of the VMware Board, said, "Together with Broadcom, VMware will be even better positioned to deliver valuable, innovative solutions to even more of the world's largest enterprises. This is a landmark moment for VMware and provides our shareholders and employees with the opportunity to participate in meaningful upside."

The transaction is expected to add approximately $8.5 billion of pro forma EBITDA from the acquisition within three years post-closing. Pro forma for each company's fiscal year 2021, software revenue is expected to account for approximately 49% of total Broadcom revenue.

**Transaction Details and Path to Completion**
Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, VMware shareholders will elect to receive either $142.50 in cash or 0.2520 shares of Broadcom common stock for each VMware share. The shareholder election will be subject to proration, resulting in approximately 50% of VMware's shares being exchanged for cash consideration and 50% being exchanged for Broadcom common stock. Based on the closing price of Broadcom common stock on May 25, 2022, the total $138.23 per-share consideration represents a 44% premium to the closing price of VMware common stock on May 20, 2022, the last trading day prior to media speculation regarding a potential transaction, and a 32% premium to VMware's unaffected 30-day volume weighted average price (VWAP). Upon closing of the transaction, based on the outstanding shares of each company as of the date hereof, current Broadcom shareholders will own approximately 88% and current VMware shareholders will own approximately 12% of the combined company on a fully diluted basis.

Michael Dell and Silver Lake, which own 40.2% and 10% of VMware shares outstanding, respectively, have signed support agreements to vote in favor of the transaction, so long as the VMware Board continues to recommend the proposed transaction with Broadcom.

In connection with the transaction, Broadcom obtained commitments from a consortium of banks for $32 billion in new, fully committed debt financing.

Broadcom expects to maintain its current dividend policy of delivering 50% of its prior fiscal year free cash flow to shareholders. Broadcom expects to maintain an investment grade rating, given its strong cash flow generation and intention to rapidly de-lever.

The transaction, which is expected to be completed in Broadcom's fiscal year 2023, is subject to the receipt of regulatory approvals and other customary closing conditions, including approval by VMware shareholders.

> The merger agreement provides for a "go-shop" provision under which VMware and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals during a 40-day period following the execution date of the definitive agreement, expiring at 11:59 p.m. Pacific Time on July 5, 2022. There can be no assurance this process will result in a superior proposal. VMware does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

**The Materially Incomplete and Misleading Proxy Statement**

23. On October 3, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that VMware stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial projections for VMware and Broadcom; (b) the financial analyses that support the fairness opinions provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan"); (c) the go-shop process; and (d) J.P. Morgan's and Company insiders' potential conflicts of interest.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for VMware and Broadcom*

24. The Proxy Statement fails to disclose material information concerning the financial projections for VMware and Broadcom.

25. In connection with the VMware financial projections created by Company management, the Proxy Statement fails to disclose the "growth rates as of May 20, 2022 for fiscal years 2022, 2023 and 2024 to inform all financial and cash flow metrics[.]" *Id.* at 63.

26. Moreover, with respect to the "VMware Management Financial Projections" and the "VMware-Approved Broadcom Financial Projections," the Proxy Statement fails to disclose

all line items underlying the calculation of: (a) Non-GAAP Operating Income; (b) Adjusted EBITDA; and (c) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Goldman Sachs's and J.P Morgan's Financial Analyses*

27. The Proxy Statement also fails to disclose material information concerning Goldman Sachs's and J.P. Morgan's financial analyses.

28. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (a) the terminal year estimate of the unlevered free cash flow to be generated by VMware used to calculate the terminal values for the Company; (b) the terminal values for the Company; (c) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; (d) VMware's total debt; (e) cash and cash equivalents and strategic investments as of April 29, 2022; and (f) the Company's fully diluted outstanding shares.

29. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose a quantification of: (a) VMware's total debt; (b) VMware's cash and cash equivalents and strategic investments as of January 31, 2023, 2024 and 2025; and (c) the inputs and assumptions underlying the discount rate of 8.5%.

30. With respect to Goldman Sachs's *Selected Precedent Transactions Analysis* and *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the individual financial metrics for each of the transactions and companies analyzed, respectively.

31. With respect to Goldman Sachs's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (a) the identities of the transactions analyzed; and (b) the individual premia for each transaction.

32. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of VMware, the Proxy Statement fails to disclose a quantification of: (a) the Company's terminal values; (b) the

inputs and assumptions underlying the discount rate range of 7.5% to 8.5%; and (c) VMware's fully diluted shares outstanding.

33. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Broadcom, the Proxy Statement fails to disclose a quantification of: (a) Broadcom's terminal values; (b) the inputs and assumptions underlying the discount rate range of 8.0% to 9.0%; and (c) Broadcom's fully diluted shares outstanding.

34. With respect to J.P. Morgan's *Public Trading Multiples Analysis* of VMware and Broadcom and *Selected Transaction Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed, respectively.

*Material Misrepresentations and/or Omissions Concerning the Go-Shop Process*

35. The Proxy Statement fails to disclose material information concerning the go-shop process, including whether the confidentiality agreements executed by two potential strategic acquirors include "don't-ask, don't-waive" standstill provisions that are still in effect and presently precluding either party from submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

36. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan., including whether J.P. Morgan has performed any services for Dell Technologies Inc., MSD Capital, L.P., Michael S. Dell or Susan Lieberman Dell Separate Property Trust[3] or any of their affiliates in the two years prior to rendering its fairness

---

[3] Michael S. Dell and the Susan Lieberman Dell Separate Property Trust together own approximately 39.9% of the Company's common stock.

opinion, and if so, the nature of the services provided and the compensation received for such services.

38. Specifically, the Proxy Statement fails to disclose whether any of Broadcom's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Proxy Statement similarly fails to disclose the details of any negotiations or communications between Company insiders and Broadcom regarding post-close employment or participation in the surviving corporation.

39. The omission of the above-referenced information renders statements in the "Certain Financial Projections Utilized by the VMware Board of Directors and VMware's Financial Advisors," "Opinions of VMware's Financial Advisors," "Background of the Transactions," and "Interests of VMware's Directors and Executive Officers in the Transactions" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of VMware will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and VMware**

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. VMware is liable as the issuer of these statements.

42. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of VMware within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of VMware and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of VMware, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  October 19, 2022  **LONG LAW, LLC**

By:  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*